589 A.2d 556

**NATIONWIDE MUTUAL INSURANCE COMPANY, et al.**

v.

**CONTINENTAL CASUALTY COMPANY, et al.**

**No. 1020, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

May 8, 1991.

Mary S. Akerley (Sasscer, Clagett, Channing & Bucher, on the brief), Upper Marlboro, for appellant Nationwide Mut. Ins.

Eugene J. Yannon, Bowie, for appellant Debra Lizzio.

Matthew J. Kastantin (Martell, Donnelly, Gallagher & Kastantin, on the brief) Rockville, for appellee Continental Cas. Co.

Argued before ALPERT, ROBERT M. BELL and FISCHER, JJ.

ALPERT, Judge.

This appeal arises from a declaratory judgment in favor of an insurer and its business insured regarding coverage under an automobile liability insurance policy for a company car that was involved in a single vehicle accident.

Halperin Distributing Corporation (Halperin) (appellee) is a wholesale food distributor in the Baltimore–Washington metropolitan area. The company employs a force of sales representatives to sell its products to area food stores, including Giant Food Stores. To this end, Halperin allowed each sales representative the use of a company car on a continuing basis for business purposes.

Kathy Zinn worked for Halperin as a sales representative. As such, she had the use of a company car for business purposes. At the invitation of a Giant Food Store deli manager, a customer on Zinn's route, Zinn and several of her guests attended a pool party at the home of another Giant Food Store employee on June 15, 1986. As Zinn and her guests—Debra Lizzio (appellant), Steven Sprehe, and Richard Thiess—were driving home from the pool party in Zinn's company car, they were involved in a single vehicle accident. The three passengers filed individual suits against Zinn and Halperin in the Circuit Court for Prince George's County, which the court consolidated. The car was insured under a business automobile policy with Continental Casualty Company (appellee) at the time of the accident.

Continental denied coverage because it and its insured, Halperin, took the position that Zinn was not driving the car for business purposes when the accident occurred. Continental sought a declaratory judgment that Zinn was not an insured under the policy and that it therefore had no obligation to defend her in the tort action or to indemnify her for any judgments which the court might enter against her in that suit.

Nationwide Mutual Insurance Company (Nationwide) (appellant), Lizzio's insurer, filed an intervenor's answer to the complaint for declaratory relief while the declaratory judgment action was pending.[1] The court permitted intervention. Nationwide then sought a declaration that Zinn was an insured under the Continental policy or, alternatively, that Lizzio was entitled to benefits under the Continental policy's uninsured motorist and personal injury protection provisions even if the policy did not provide liability coverage for Zinn. The circuit court stayed the consolidated tort actions pending the outcome of the declaratory judgment action.

On June 27 and 28, 1989, the Circuit Court for Prince George's County (the Hon. Joseph S. Casula, presiding) held a hearing on the declaratory judgment action. The primary issue at trial was whether Zinn had Halperin's permission to use the company car at the time of the accident. On January 22, 1990, the circuit court held that Zinn was a non-permissive user of the Halperin vehicle and, therefore, that the Continental policy did not provide coverage for the accident. The court also held that Continental had no duty to defend or indemnify Zinn against any of her passengers' claims. Further, Continental had no legal obligation to pay the passengers (the tort plaintiffs) any money under the policy that it had issued to Halperin.

Lizzio, joined by Thiess and Sprehe, subsequently filed a motion to alter or amend the decision, which the court denied on May 16, 1990. On May 17, 1990, the court granted Halperin's motion for summary judgment that it had filed in the consolidated tort suit. Nationwide appeals to us from these rulings and asks us whether:

I.    The trial court was clearly erroneous when it found that Zinn was a "non-permissive" user of the Halperin vehicle.

---

1.  Nationwide apparently sought intervention after Lizzio contended that the uninsured motorist provision in her policy with Nationwide would be triggered if the court denied Zinn coverage under the Continental policy.

II.   A. The trial court impermissibly intertwined the issue of whether Zinn was a permissive or non-permissive user under the language of the policy with the issue of whether she was acting within the scope of her employment—an issue which the jury in the tort action properly must decide.

B.   The trial court's ruling was clearly erroneous and in derogation of public policy.

III.  The trial court erred when it failed to find that Lizzio was entitled to personal injury protection benefits under the Continental policy regardless of Zinn's status under that policy and that Lizzio also was entitled to benefits under the Continental policy's uninsured motorist provisions if Zinn is not an insured for purposes of liability.

Preliminarily, we clarify the procedural posture of this case. After Nationwide filed its appeal, Halperin filed a motion to dismiss that part of the appeal concerning the summary judgment entered in its favor as to the three personal injury claims. Continental contended that the order granting the summary judgment was not subject to appeal because the claims against Zinn still were pending in those cases. Although we initially denied the motion, we ultimately granted the request upon Halperin's motion for reconsideration.

Pursuant to Rule 8–602(e)(1)(B),[2] we remanded the case to the circuit court for that court to determine whether to enter final judgment under Rule 2–602(b)[3] as to any or all

---

2.  Rule 8–602(e)(1)(B) provides that
    [i]f the appellate court determines that the order from which the appeal is taken was not a final judgment when the notice of appeal was filed but that the lower court had discretion to direct the entry of a final judgment pursuant to Rule 2–602(b), the appellate court may ... remand the case for the lower court to decide whether to direct the entry of a final judgment....

3.  Rule 2–602(b) provides that "[i]f the court expressly determines in a written order that there is no just reason for delay, it may direct in the order the entry of a final judgment...."

of the three personal injury claims. The court declined to enter an order of final judgment for any of them. Thus, only those orders of the circuit court concerning the declaratory judgment in favor of Continental are before us.

## I. and II.

Nationwide contends that under the language of the Continental policy, Zinn had permission to use the company car at the time of the accident, *i.e.*, she was a permissive user.

The policy provides that Continental "will pay all sums the *insured* legally must pay as damages because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto." The policy then defines an "insured" as the policy holder or "[a]nyone else ... while using *with your permission* a covered auto you own...." (emphasis added). This latter provision generally is referred to as an omnibus clause. *See, e.g.,* 7 Am. Jur.2d *Automobile Insurance* § 248 (1980).

Nationwide contends that this language, by its plain meaning, means that anyone who used the car with Halperin's permission was an insured for purposes of coverage under the policy. Because Halperin had assigned the car to Zinn on a continuing basis, Nationwide reasons that she therefore had permission to use it when the accident occurred. Continental, on the other hand, contends that the language provides coverage only if Zinn used the vehicle within the scope of the permission given by Halperin. Because Zinn was using the car for personal, rather than business, purposes when the accident occurred, Continental argues that her use of the car fell outside the scope of Halperin's permission.

In drafting an automobile insurance policy, insurers often will employ one of two standard provisions to define who, other than the policyholder, is an insured under the policy:

(1) Any person while using the insured auto, provided the *actual use* thereof is within the permission of the named

insured. *See, e.g., Kelsay v. State Farm Mutual Automobile Ins. Co.*, 242 Md. 528, 532–33, 219 A.2d 830 (1965).

(2) Any other person while using the insured auto with the permission of the named insured, providing his actual operation is within the *scope of such permission. See, e.g., Bond v. Pennsylvania Nat'l Mutual Casualty Ins. Co.*, 289 Md. 379, 381, 424 A.2d 765 (1981).

As noted, the Continental policy did not contain either of those clauses. It did not specifically require that the "actual use" be within the employer's permission or that the operation be within the "scope of such permission," but required only that the car be used "with [the employer's] permission."

Nationwide interprets the more traditional language to mean that the insurer will provide coverage only if the permissive user was acting within certain defined limits when the accident occurred. Because Continental elected not to use this qualifying language, *i.e.*, "actual use" or "scope of permission," Nationwide contends that it was the result of Continental's "considered decision to afford broader coverage." Thus, argues Nationwide, the trial court's finding that Zinn's use of the vehicle was outside the scope of Halperin's permission was irrelevant to the issue of coverage; it would be germane only in the underlying tort action in which Halperin's vicarious liability is at issue. On this basis, Nationwide concludes that the trial court impermissibly inserted this "scope of permission" language into the Continental policy.

In *Washington Metropolitan Area Transit Authority v. Bullock*, 68 Md.App. 20, 31–32, 509 A.2d 1217 (1986), we noted that

> [T]hree alternative rules of construction [have] developed with respect to [the omnibus clause in] permissive use cases. The most expansive of these, sometimes known as the 'liberal,' or 'initial permission,' or 'hell or high water' rule holds that 'if the vehicle was originally entrusted by the named insured, or one having proper authority to give

permission, to the person operating it at the time of the accident, then despite hell or high water, such operation is considered to be within the scope of the permission granted, regardless of how grossly the terms of the original bailment may have been violated.' A second rule, denoted the 'conversion' rule, recognizes that a particular use can so exceed the scope of initial permission as to become non-permissive but requires that the departure be such as would cause the user to be liable to the owner in an action for conversion. The third rule, considered to be 'an intermediate position between the two more extreme rules,' is known as the 'minor deviation' rule. It regards 'minor deviations' as still being within the scope of permissive use."

(citations omitted).

■ Maryland specifically has rejected the "liberal" rule, *see Nat'l Grange Mutual Ins. Co. v. Pinkney,* 284 Md. 694, 697, 399 A.2d 877 (1979); *Insurance Co. of North America v. State Farm Mutual Automobile Ins. Co.,* 281 Md. 381, 378 A.2d 1344 (1977), with two results. First, absent the liberal rule, "the law seems to be ... [that] 'where the employer has expressly forbidden his employee to use the employer's automobile for his own personal purposes, such use of the automobile by the employee in violation of orders is not deemed to be one with the permission of the employer within the meaning of the omnibus clause of the liability insurance policy.'" *Washington Transit Authority,* 68 Md.App. at 35, 509 A.2d 1217 (quoting Annotation, *Automobile liability insurance: permission or consent to employee's use of car within meaning of omnibus coverage clause,* 5 A.L.R.2d 600, 651 (1949)). Second, in construing omnibus clauses, Maryland has adopted "an almost unique approach, rejecting all three rules and opting instead to construe, on a case-by-case basis, the particular wording of the omnibus clause at issue." *Washington Transit Authority,* 68 Md.App. at 32, 509 A.2d 1217. Because these clauses are part of contracts, we must interpret them according to principles of contract construction.

■ " 'It is well settled that in interpreting insurance contracts, words are to be given their customary and normal meaning.' " *Nat'l Grange Mutual Ins. Co. v. Pinkney*, 284 Md. 694, 705, 399 A.2d 877 (1979) (quoting *Gov't Employees Ins. Co. v. DeJames*, 256 Md. 717, 720, 261 A.2d 747 (1970)). " 'If the language of an insurance contract is ambiguous, ... construction is for the jury.' " *Id.* " 'Absent ambiguity the construction of the contract remains within the province of the court....' " *Id.* "That a term cannot be precisely defined so as to make clear its application in all varying factual situations does not mean that it is ambiguous." *Allstate Ins. Co. v. Humphrey*, 246 Md. 492, 496, 229 A.2d 70 (1967). None of the parties contend that the omnibus provision in this case is ambiguous. In fact, Nationwide asserts that the provision is unambiguous. We agree and conclude that construction of the clause was a matter of law for the court rather than a question of fact for the jury.

The clause in the business policy at issue provides coverage for an employee "while using with your permission a covered auto...." Black's Law Dictionary defines "permission" as follows:

A license to do a thing; an authority to do an act which, without such authority, would have been unlawful. An act of permitting, formal consent, authorization, leave, license or liberty granted, and it has a flexible meaning depending upon the sense in which it is used.

*Id.* at 1026 (5th ed. 1979) (citation omitted).

■ Clearly, the language "using with your permission" means that anyone who used the car with Halperin's permission was an insured for purposes of coverage under the policy. We also think, however, that "using with your permission" includes the alleged qualifiers "with actual permission" and "within the scope of the permission." *See Fisher v. United States Fidelity & Guaranty Co.*, 86 Md.App. 322, 331, 586 A.2d 783 (1991). That is, we think that these latter two phrases simply are other ways of saying "with permission." *Id.* If Continental had used

"actual permission" or "within the scope of the permission," these terms would be duplicative, rather than restrictive in effect. *Id.* Continental's failure to include these qualifiers, in our opinion, does not expand coverage.

Thus, we think that the presence or absence of these so-called qualifiers has no effect on the operation of the clause.[4] Whether the phrase used is "within the scope of permission" or simply "with permission," the effect is the same: to be an insured for purposes of coverage under the policy, the individual's use of the vehicle must fall within the scope of permission given by the insured.

■ At this juncture, we find ourselves on the proverbial "horns of a dilemma." As pointed out by appellant in its brief and at oral argument:

---

**4.** Because Nationwide specifically complained that the trial court improperly inserted "scope of permission" language into the policy, we focused our discussion solely on the interpretation of that phrase. We note, however, that we reached a similar conclusion about the use of the phrase "actual use" in *Fisher v. United States Fidelity & Guaranty Co.,* 86 Md.App. 322, 331–334, 586 A.2d 783 (1991).

In *Fisher*, an insured's employee had permission to drive a company vehicle home and to use it for company business. *Id.* at 324, 586 A.2d 783. While at home, the employee responded to a personal emergency unrelated to the employer's business and was involved in an accident enroute. *Id.* The insurer contended that the policy provided coverage only if the employee used the vehicle within the scope of the permission which the employer granted to the employee. *Id.* at 325, 586 A.2d 783. The employee, on the other hand, argued that the language of the policy was insufficient to restrict the employee's use to the conditions which the employer imposed because the insurer failed to include qualifying language such as "within the scope of the permission," "actual permission," "actual use," and so forth. *Id.* at 325, 331, 586 A.2d 783.

In response, we said that " 'the Court of Appeals [has] observed that many cases from other jurisdictions indicate that the actual use of a vehicle is 'the particular use contemplated when permission is granted and relied upon.' ... [I]t is clear that this definition is controlling in Maryland.' " (quoting *Nationwide Gen. Ins. Co. v. Gov't Employees Ins. Co.,* 81 Md.App. 104, 120–21, 566 A.2d 1117 (1989) (citations omitted)). We then said that "we fail[ed] to see where the absence of a similar phrase in the case at bar modifie[d] or change[d] the clear meaning of the omnibus language of the policy in the instant case." *Id.* 86 Md.App. at 332–333, 586 A.2d 783.

Appellees clearly indicate in their declaratory judgment action ... that they see the issue to be scope of employment and whether within the scope of employment, defendant Zinn was acting with permission.

Those facts that determine "scope of employment"[5] in the underlying tort suit are the same facts which would determine "scope of permission" within the declaratory judgment action. The facts that determine "scope of permission" are so intertwined with those determining "scope of employment" as to be practicably inseparable. If we were to uphold the trial court on its factfinding, there is indeed the possibility of a conflicting decision in the tort case that might well lead to a separate appeal in that case. That, in turn, could lead to a new trial, wherein Halperin, who is no longer a party in the tort suit, *might* be held responsible under the doctrine of *respondeat superior*, thus fostering yet another appeal. The ominous prospect of a multiplicity of appeals ought not to be encouraged by us.

*Allstate Ins. Co. v. Atwood,* 319 Md. 247, 572 A.2d 154 (1990), a decision not available to the circuit court at the time of trial herein, shall guide our way. There, Judge Eldridge reasoned for the Court of Appeals as follows:

It would promote the efficient administration of justice, and be less burdensome on the parties, if the insurer's request for declaratory relief were made in the tort case. Nevertheless, for the reasons set forth in Part III of this opinion, the insurer should not be a party to the tort case until after the jury's verdict or judge's decision on liability is rendered.

In the future, therefore, a separate declaratory judgment action, after the tort suit, will not be allowed in the conflict of interest situation like that presented here. The best procedure to resolve coverage disputes like the

---

5. For the general test and other factors to be considered in determining whether an employee's conduct was within the scope of his employment, *see Sawyer v. Humphries,* 322 Md. 247, 254–261, 587 A.2d 467 (1991).

one in this case is a declaratory proceeding, as part of the tort case, initiated after the rendition of the jury's verdict or court's decision regarding liability.

After the jury's verdict or court's decision in the tort case, and no later than ten days after the entry of judgment in the tort suit, the insurer should file a motion to intervene, a motion under Maryland Rules 2–532, 2–533, or 2–534, whichever is appropriate, and a complaint for declaratory relief regarding its duty to pay the damages assessed against its insured. The motion under Rules 2–532, 2–533, or 2–534 will render the tort judgment nonfinal.

The trial judge should then proceed under the insurer's declaratory judgment complaint as set forth in Part IV above. The trial judge, however, will also have under his control the non-final judgment in the tort case, and will be able to grant relief under Rules 2–532, 2–533, or 2–534, regarding that tort judgment. In this manner, consistency can be obtained, and there will ultimately be a single final judgment resolving both the tort action and the insurer's obligation.

*Id.* at 264–65, 572 A.2d 154 (citations omitted).

The court further declared that this procedure was to be followed in "future cases like the present one." We deem this case to fall into that category. Accordingly, the judgment in this case will be vacated and all further proceedings herein shall be stayed until the appropriate time during the course of the related tort action when the parties should then proceed in accordance with the court's instructions in *Allstate, supra.*

## III.

Nationwide contends that the trial court erred when it failed to find that, regardless of Zinn's status under the Continental policy, Lizzio was entitled to personal injury protection benefits and, if Zinn was not an insured for

purposes of liability, that Lizzio also was entitled to benefits under the uninsured motorist provisions.

In a personal injury protection (PIP) endorsement to its policy, Continental agreed to pay medical expense benefits and income continuation or essential services benefits to "each injured person" for bodily injuries "caused by accident and involving a motor vehicle." The endorsement defines an "injured person" as, *inter alia,* "[a]ny . . . person who sustains bodily injury . . . while occupying the insured motor vehicle as a guest or passenger. . . ."

There also is an endorsement that provides uninsured motorist (UM) coverage. Specifically, the UM endorsement provides that:

B. WE WILL PAY

1. We will pay all sums the insured is legally entitled to recover as damages from the owner or driver of an uninsured motor vehicle. The damages must result from bodily injury sustained by the insured, or property damage, caused by an accident. The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the uninsured motor vehicle.

\*  \*  \*  \*  \*  \*

D. WHO IS INSURED

1. You or any family member.

2. Anyone else occupying a covered auto or a temporary substitute for a covered auto.

.  .  .  .  .

4. 'Uninsured motor vehicle' means a land motor vehicle or trailer:

a. For which no liability policy or other form of security accepted by the Motor Vehicle Administrator provides at least the amounts specified by the financial responsibility law of Maryland.

b. For which the sum of all liability bonds or policies at the time of an accident provides at least the amounts specified by the financial responsibility law of Mary-

land, but their limits are less than the limit of this insurance, or

c. For which an insuring or bonding company denies coverage or is or becomes insolvent. . . .

Nationwide argues that because the company car was a "covered auto" under the Continental policy and because Lizzio was a passenger in the car when the accident occurred, she is entitled to PIP benefits. On these facts, it further argues that Lizzio also is entitled to UM benefits if we find that Zinn is a non-permissive user because the vehicle then is an uninsured motor vehicle within the meaning of the policy. The trial court did not address these issues specifically in its order of January 22, 1990. It simply ruled that Continental "was not legally obligated to pay the Defendants, Zinn, Sprehe, Lizzio and Thiess any monies under the terms and conditions of its policy with Herbert Halperin Distributing Corporation."

In *Pacific Indemnity Co. v. Interstate Fire & Casualty Co.*, 302 Md. 383, 388–89, 488 A.2d 486 (1985), the Court of Appeals set forth the principles of insurance contract construction in Maryland:

An insurance contract, like any other contract, is measured by its terms unless a statute, a regulation, or public policy is violated thereby. To determine the intention of the parties to the insurance contract, which is the point of the whole analysis, we construe the instrument as a whole. Maryland courts should examine the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution.

Both Continental and Halperin intended to exclude coverage in situations in which an individual operated a company vehicle without Halperin's permission. If we adopt Nationwide's interpretation of the UM and PIP provisions, then we circumvent the insurer and the insured's intent to avoid coverage of claims that arise from the negligence of a non-permissive user. We decline to do so.

Of course, if it is determined that the subject vehicle was covered, then obviously the subject coverage must be afforded.

JUDGMENT VACATED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; COSTS TO BE DIVIDED EQUALLY BETWEEN NATIONWIDE MUTUAL INSURANCE COMPANY AND CONTINENTAL CASUALTY COMPANY.