657 A.2d 818

Carol Ann WILKERSON, et al.,

v.

Patrick A. MICHAEL, et al.

No. 1486, Sept. Term, 1994.

Court of Special Appeals of Maryland.

May 2, 1995.

Henry L. Belsky (Sherae M. McNeal and Schlachman, Belsky & Weiner, P.A., on the brief), Baltimore, for appellants.

George M. Church (Todd J. Suddleson and Church & Houff, P.A., on the brief), Baltimore, for appellees.

Argued before BISHOP, DAVIS and HOLLANDER, JJ.

BISHOP, Judge.

Appellants, Carol Ann Wilkerson, Sidney Schlachman as personal representative of the estate of Sheri Ann Wilkerson, Brenda K. Fiorenza, and Gina K. Fiorenza, filed suit in the Circuit Court for Baltimore County against appellees, Patrick

Alan Michael ("Patrick"), Arnold Leroy Michael ("Mr. Michael"), and Deborah Lynn Buck ("Debbie"), deceased, for damages arising out of a motor vehicle accident. Frederick R. Buck and Monica Buck ("the Bucks"), personal representatives of Debbie's estate, moved for judgment at the end of appellants' case, which the trial court denied. Patrick similarly made a motion for judgment, which the trial court denied.

The jury returned a verdict in favor of appellants in the following amounts: Gina Fiorenza, $1,729,256.76 in compensatory damages and $100,000 in punitive damages; Brenda Fiorenza, $850,918.12 in compensatory damages and $100,000 in punitive damages; the estate of Sheri Wilkerson, $7000 in compensatory damages and $100,000 in punitive damages; Carol Wilkerson, $60,610.72 in compensatory damages; and Theodore Thomas Wilkerson, $15,000 in compensatory damages. The compensatory damages were assessed against Debbie's estate and the punitive damages were assessed against Patrick.

Through various post-trial motions made by the Bucks, the jury verdict was reduced as follows: Gina Fiorenza, $100,000 in compensatory damages; Brenda Fiorenza, $100,000 in compensatory damages; the estate of Sheri Wilkerson, $7,000; and Carol Wilkerson, $60,610.72. In an unreported opinion, this Court upheld the reduction of the jury verdict.

Appellants filed a request for garnishment of property other than wages to attach the insurance proceeds they allege were due from appellee, Allstate Insurance Company ("Allstate"), Mr. Michael's insurer, to satisfy the judgment rendered against Debbie's estate. Allstate denied that it was the proper garnishee and filed a motion for summary judgment, which the trial court granted, without opinion. Appellants filed a motion for reconsideration and a motion to alter or amend judgment, both of which the trial court denied.

## *Issues*

Appellants raise two issues, which we rephrase:

I. Does this case involve a conflict of interest that requires the procedures described in *Allstate Insurance Company v. Atwood*, 319 Md. 247, 572 A.2d 154 (1990)?

II. Did the trial court err in granting Allstate's motion for summary judgment?

## Facts

This appeal arises from a single vehicle automobile accident that occurred on March 13, 1987, and involved Patrick's 1982 custom-designed Chevrolet van. At the time of the accident, Patrick owned the van although the van was insured under a policy that Mr. Michael, Patrick's father, had with Allstate. Mr. Michael's policy excluded Patrick as a driver, specifically disclaiming all liability for "damages, losses or claims arising out of the *operation or use* of the insured motor vehicle by [Patrick Alan Michael] ... whether or not such *operation or use* was with the expressed or implied permission of a person insured under the Policy." (Emphasis added).

Debbie, Patrick's girlfriend, had, on occasion, the unconventional tendency of jointly driving the van with Patrick. Both of them would sit in the driver's seat and one would steer while the other controlled the acceleration and braking. On the night of the accident, Mr. Michael had given Debbie permission to drive the van and had expressly told Patrick that he was not to drive the van.

Patrick's deposition testimony, read into evidence at trial, established that, on the night of the accident, during the first part of the evening, Debbie was driving the van, and Sheri Wilkerson, Heather Howard, and Eric Zeman were passengers. After picking up Debbie's cousins, Brenda and Gina Fiorenza, Patrick started driving the van "because Debbie started looking a little tipsy." Patrick admitted that he and Debbie had been drinking during the evening. On their way to a restaurant, however, Debbie and Patrick were both driving. Debbie sat with Patrick in the driver's seat, and "[Debbie] would steer and [Patrick] worked the pedal or vice versa." Patrick testified that this was only for a short period

of time because Debbie's "cousins were in the van and she hadn't seen them in awhile." According to Patrick, Debbie had stopped driving and was talking with her cousins.

At the time of the accident, Debbie was seated partially on the driver's seat and partially on an ice chest positioned between the driver's seat and front passenger seat. Sheri Wilkerson was also seated on the ice chest. Eric Zeman and his girlfriend Heather Howard were seated in the front passenger seat. The Fiorenzas were seated in the back of the van on a mattress.

Patrick, while racing with another car, drove the van across the center line and crashed into a guard rail and tree near the intersection of York Road and Thornton Mill Road in Baltimore County, Maryland. Debbie, Sheri Wilkerson, and Heather Howard were killed. Gina and Brenda Fiorenza were severely injured. Appellants allege that Debbie may have grabbed the steering wheel during the accident; however, according to Patrick, just before the accident, "Debbie was not operating the van in any way" and Debbie probably could not "have grabbed [the steering wheel] to try to steer the van away from the guardrail [because the accident] happened too quick for her to turn around from talking to her friends to help steer."

After a review by independent counsel, Allstate formally advised the Bucks and Mr. Michael that it was "denying liability for all damages, losses and claims arising out of the motor vehicle accident of March 13, 1987." Allstate, however, provided the Bucks and Patrick with counsel through the conclusion of the jury trial. At the end of the trial, judgment in the amount of $2,597,785.60 was entered against Debbie's estate. Through post-judgment motions, that amount was reduced to $267,610.72.

Appellants served a request for garnishment of property, other than wages, upon Allstate, alleging that Allstate was responsible for satisfying the judgment amounts entered against Debbie's estate because the van involved in the accident was insured by Allstate, and Debbie was a permissive

user of the van. Allstate, however, denied that it was the proper garnishee and asserted that it was not indebted to Debbie's estate.

## *Discussion*

### I. The *Atwood* Issue

Appellants contend that, in the case *sub judice*, a "conflict of interest situation" exists that requires Allstate to follow the mandatory procedures outlined in *Allstate Insurance Co. v. Atwood,* 319 Md. 247, 572 A.2d 154 (1990). In *Atwood,* the insured, the appellee, was sued in tort because of personal injury. The complaint alleged alternative negligence and battery counts. The homeowner's insurance policy that covered the appellee "contained an exclusion for 'bodily injury . . . intentionally caused by an insured person.'" *Id.* at 250, 572 A.2d 154. Under that exclusion, if the appellee were found negligent, coverage would be afforded; however, if the appellee were found liable for battery, there would be no coverage. The jury found the insured negligent and awarded damages and, thus, "as a contractual matter, Allstate would normally be bound by the judgment in the tort case." *Id.* at 261, 572 A.2d 154.

The Court held, however, that "the insurer should be bound by the tort action's resolution of the intentional/negligence issue if, but only if, that issue was fairly litigated in the tort trial." *Id.* If the issue that determines insurance coverage is not fairly litigated in the tort trial, "considerations of public policy and fairness militate against holding that the insurer is bound by the outcome of the tort case," and "[i]f the effect of the tactics of both sides in a tort trial, which is supposed to be an adversarial undertaking, is to cooperate in persuading a jury that intentional wrongful conduct is mere 'negligence,' the administration of justice is subverted." *Id.* at 262–63, 572 A.2d 154.

Accordingly, the Court established that, in the conflict of interest issue presented in *Atwood,* the insurer should be able to bring a post-tort trial declaratory judgment action.

The trial judge in that declaratory judgment action would first determine, as a legal matter, whether the issue, which was resolved in the tort trial and which determines insurance coverage, was fairly litigated in the tort trial. If the declaratory judgment judge decides that the issue was fairly litigated in the tort trial, there should be no relitigation of that issue in the declaratory judgment action. Instead, a final judgment would be entered in the declaratory judgment action declaring that the issue was fairly litigated in the tort trial and that the insurer is bound by the outcome of the tort case against its insured. On the other hand, if the judge in the declaratory judgment action determines that the issue was not fairly litigated in the tort trial, then the insurer should be permitted to relitigate the matter in the declaratory judgment action.

*Id.* at 262, 572 A.2d 154.

In *Atwood,* the factual predicate that a conflict of interest existed involved whether an action was intentional or negligent and, based on such determination, whether there was coverage. *Atwood* was based, in part, on *Brohawn v. Transamerica Insurance Co.,* 276 Md. 396, 347 A.2d 842 (1975). In *Brohawn,* like *Atwood,* "the issue to be resolved in the declaratory judgment proceeding [was] the same as an issue in the tort action." *Atwood,* 319 Md. at 252, 572 A.2d 154. The issue presented in both proceedings was whether the injury at issue was inflicted intentionally or negligently. In the case *sub judice,* the coverage dispute is not an intentional versus negligent issue.

We recognize, however, that *Atwood* does not state explicitly that the declaratory judgment procedure applies only when the issue is whether an injury was intentional or negligent. In fact, post–*Atwood* decisions from this Court do indicate that the linchpin for determining whether *Atwood* applies is not whether there is an intentional/negligence issue, but, rather, whether the issue to be resolved in the insurance coverage action is the same as an issue in the underlying tort action. If the issue is the same, the next question is whether that issue

has been fairly litigated during that tort trial. If not, the determination is made in the declaratory judgment action.

In *Nationwide Mutual Insurance Co. v. Continental Casualty Co.*, 87 Md.App. 261, 589 A.2d 556, *cert. denied*, 324 Md. 122, 596 A.2d 628 (1991), we applied *Atwood* to determine whether Continental Casualty was required to provide coverage for an automobile accident involving a Halperin Distributing Corporation employee who was driving a company automobile insured by Continental Casualty. The insurance coverage dispute involved whether the Halperin employee, who was driving the insured automobile, was driving the car for business purposes, *i.e.*, acting within the "scope of employment." *Id.* at 271–72, 589 A.2d 556. "We deem[ed] this case to fall into [the *Atwood*] category," noting that the facts that determined "scope of employment" in the underlying tort suit were the same facts determining the "scope of permission" issue in the declaratory judgment action. *Id.*

In *Chesapeake Physicians Professional Ass'n v. Home Insurance Co.*, 92 Md.App. 385, 608 A.2d 822, *cert. denied*, 328 Md. 446, 614 A.2d 973 (1992), we recognized that, in *Atwood*, "the Court of Appeals created an exception to the *Brohawn* general rule against an insurer litigating an issue also present in the underlying tort suit.... [I]n limited circumstances, an insurer may intervene, after the completion of the tort trial, to assert that the conduct of its insured was excluded from coverage." *Id.* at 392, 608 A.2d 822. We held that, because "the Chesapeake companies and Home [Insurance Co.] are seeking to litigate a coverage question *wholly apart* from the underlying tort suit brought by [the plaintiff]," the *Atwood* exception did not apply. *Id.* at 393, 608 A.2d 822 (emphasis added).

Finally, in *Medical Mutual Liability Insurance Society v. Azzato*, 94 Md.App. 632, 618 A.2d 274, *cert. denied*, 330 Md. 319, 624 A.2d 491 (1993), Dr. Azzato, a plastic surgeon, was sued by a former patient because of damages he allegedly caused when he continually supplied her with illicit drugs that ultimately caused her "to be admitted to Suburban Hospital as

psychotic and near death." *Id.* at 635, 618 A.2d 274. Dr. Azzato filed suit against Medical Mutual, his professional liability insurer, alleging breach of contract and negligence based on Medical Mutual's failure to provide coverage. Medical Mutual argued that its policy "unambiguously excluded coverage for injuries arising out of criminal activities." *Id.* at 637, 618 A.2d 274.

Dr. Azzato asserted that *Atwood* governed the coverage question because the issues had been fully and fairly litigated by the Health Claims Arbitration Panel, and, because Medical Mutual did not intervene during arbitration, it should not be permitted to do so now. *Id.* at 642, 618 A.2d 274. Rejecting Dr. Azzato's argument, we held that

> [t]he critical difficulty with this argument is that the procedure outlined in *Atwood* is simply inapplicable to the present question. The *Atwood* procedure only applies when the issue to be resolved in the coverage action is "the same as an issue in the tort action." Judge Eldridge in *Atwood* carefully distinguished that situation from cases where questions of policy coverage "are independent and separable from the claims asserted in a pending suit by an injured third party." In the latter situation, the Court of Appeals has approved the use of a separate action *prior* to a pending tort action, or *after* resolution of the tort action, as generally appropriate means for determining coverage questions.
>
> Here, ... the coverage question, *i.e.,* whether the complained of acts were crimes, [is] clearly "independent and separable" from the claim asserted in the pending tort action, *i.e.,* whether the acts were medical malpractice. Thus, resolution of the tort action did not, and could not, resolve the coverage question.

*Id.* at 642–43, 618 A.2d 274 (footnotes omitted).

We recognize that *Atwood* was not intended to be construed so narrowly that it only applies when the coverage issue is whether the act was "intentional or negligent." This awareness aside, however, we agree with appellee that *Atwood* does not apply to the case *sub judice.* We explain.

*Atwood* established a mechanism by which an aggrieved insurance carrier might obtain some relief if the critical issue, determining coverage, were not fairly litigated at trial. Allstate, however, does not allege that it was aggrieved by any actions of counsel at trial. Moreover, Allstate does not contend that there were any coverage issues that were not fairly litigated. In fact, there was no finding, by the jury or the trial court, that would have triggered coverage under Mr. Michael's policy with Allstate. In the *Atwood* post-trial declaratory judgment action, the trial judge first determines, as a legal matter, whether the issue resolved in the tort trial, and which determines insurance coverage, was fairly litigated in the tort trial; no such issue, however, exists in the case *sub judice.*

The *Atwood* procedure is for the benefit of, and the protection of, the insurance company. Allstate does not desire to relitigate any issue because it is not questioning the trial judgment. Allstate, in its brief, states that, "[f]ollowing the verdict, there was simply no reason for Allstate to intervene or to challenge the fairness of the trial under the dictates of *Atwood.*"

## II. Summary Judgment

Under Rule 2–501(e), a trial court "shall enter judgment in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." As indicated *supra,* the trial court granted Allstate's motion for summary judgment without opinion. Appellants allege that there is a genuine dispute as to a material fact: "[W]ho was actually driving this vehicle at the time of the accident, Patrick Michael, Debra Buck or both as was their usual habit?"

Both parties agree that, if Patrick were operating the vehicle by himself at the time of the accident, there would be no coverage under Mr. Michael's Allstate policy because of the excluded driver provision. Additionally, both parties agree that, if Debbie were operating the van by herself with Mr. Michael's permission, at the time of the accident, Allstate

would be required to provide coverage. The parties dispute, however, whether Allstate would be required to afford coverage if both Debbie, a permissive user, and Patrick, an excluded driver, were operating the van as co-drivers at the time of the collision.

There is no evidence that would support a finding that Debbie, alone, was in control of the van at the time of the accident. The record supports a finding that Patrick was solely in control of the van when the accident occurred. For purposes of its motion for summary judgment, however, Allstate conceded that Patrick and Debbie were jointly operating the vehicle at the time of the accident. As we shall explain *infra,* we hold that there is *no coverage* under the Allstate policy in the case *sub judice,* whether Patrick was driving alone *or jointly* with Debbie.

Mr. Michael's policy with Allstate excluded Patrick as an insured driver in accordance with § 240C-1 of Maryland's Insurance Code. Section 240C-1 provides:

(a)(1) In any case where an insurer is authorized under this article to cancel or nonrenew or increase the premiums on an automobile liability insurance policy issued in this State to any resident of a household, under which more than 1 person is insured because of the claim experience or driving record of 1 or more but less than all of the persons insured under the policy, the insurer shall in lieu of cancellation, nonrenewal, or premium increase offer to continue or renew the insurance, but to exclude all coverage when a motor vehicle is *operated* by the specifically named excluded person.... The policy may be endorsed to specifically exclude all coverage for any of the following when the named excluded driver is operating the motor vehicle(s) covered under the policy whether or not that *operation or use* was with the express or implied permission of a person insured under the policy[.]

Md.Ann.Code art. 48A, § 240C-1(a)(1) (1994) (emphasis added).

In *Nationwide Mutual Insurance Co. v. Miller,* 305 Md. 614, 505 A.2d 1338 (1986), the Court of Appeals held that a named excluded driver endorsement under § 240C–1 prevents a passenger, otherwise covered as an additional insured, from collecting uninsured motorist benefits if, at the time of the accident, the insured vehicle was driven by the excluded driver. The Court explained:

> [To hold otherwise] would defeat the purpose of the named excluded driver provision in § 240C–1. As the plain language of that section shows, *the purpose was to exclude risks arising from the named person's negligence in driving the car.* If the uninsured motorist coverage on a vehicle were deemed applicable when the driver is excluded from the vehicle's ordinary liability coverage, then the insurer would in effect still be insuring the liable driver, who had a bad claims or driving record, but the insurer would be denied the appropriate premium.

*Id.* at 618–19, 505 A.2d 1338 (emphasis added).

In *Neale v. Wright,* 322 Md. 8, 585 A.2d 196 (1991), a husband and wife together purchased an automobile at a time when the husband was excluded from their liability insurance policy under § 240C–1. The husband was operating the vehicle when he was involved in a car accident. Mrs. Neale, the insured spouse, was sued under a theory of negligent entrustment. The Court held that the non-excluded insured spouse would not be covered under a theory of negligent entrustment and, therefore, the insurer would not be liable. The Court reasoned:

> If the insurer of the family car were still liable under the policy if the excluded driver operates the vehicle, on a theory of negligent entrustment by the non-excluded insured spouse, the purpose of the named driver exclusion provision would be defeated. Insurers would be indirectly liable for the injuries caused by the negligent driving of the excluded drivers despite the legislative intent to the contrary.

*Id.* at 22, 585 A.2d 196. Applying the same reasoning to the case *sub judice,* if Allstate were liable under Mr. Michael's policy, on a theory of joint operation by an excluded and a non-excluded driver, Allstate "would be indirectly liable for the injuries caused by the negligent driving of [Patrick] despite the legislative intent to the contrary." *Id.*

No Maryland appellate court has decided directly whether insurance coverage exists when a vehicle is being jointly operated by an excluded driver and an insured, non-excluded driver. The Supreme Court addressed this issue, however, in *State Farm Mutual Automobile Insurance Co. v. Coughran,* 303 U.S. 485, 58 S.Ct. 670, 82 L.Ed. 970 (1938). In *Coughran,* the insurance policy at issue excluded from coverage losses caused by the operation of an insured vehicle by an unlicensed driver. *Id.* at 487–88, 58 S.Ct. at 670–71. When the accident occurred, the insured car was being driven by an unlicensed thirteen year old girl. Mrs. Anthony, an insured driver, was in the passenger seat. The trial court found that

> at the time of the accident, insofar as the propulsion of the vehicle was concerned, other than the means of direction, all instrumentalities of said automobile were being physically actuated by said [uninsured and] that the proximate and direct cause of the collision between the insured automobile and [the truck] was the act of [the insured] in *seizing the steering wheel of the automobile at and immediately preceding the moment of impact and collision.*

*Id.* at 490, 58 S.Ct. at 672 (emphasis added).

In holding that there was no coverage, the Supreme Court reasoned:

> [T]he word "operate" has varying meanings according to the context. One may operate singly with his own hands, *or jointly with another,* or through one or more agents.
>
> . . . .
>
> If, as found, the automobile was being jointly operated by the [insured] and the [uninsured,] *the risk was not within the policy.* The latter was forbidden by law to operate or drive jointly or singly. If the [insured] was in control the

statute forbade her to permit driving by the [uninsured]. In any view, when the collision occurred the car was being driven or operated in violation of the statutes.

*Id.* at 491–92, 58 S.Ct. at 672–73 (emphasis added). Therefore, if, in the case *sub judice,* Patrick and Debbie were jointly operating the van at the time of the accident, that risk would not be contemplated within § 240C–1 or the Allstate insurance policy because Patrick was forbidden by law to operate or drive the van jointly or singly.

Both § 240C–1 and the excluded driver provision in Mr. Michael's Allstate insurance policy specifically deny coverage when liability arises from the *operation* or use of an insured motor vehicle by an excluded person such as Patrick. Even if it were found that Debbie grabbed the steering wheel at the time of the accident, and assuming *arguendo,* that grabbing the steering wheel would constitute *operating* the van, the fact remains that Patrick, an excluded driver, was operating the van in direct contravention to § 240C–1 and the Allstate insurance policy.

The jury found that Patrick's gross negligence caused the injuries resulting from the accident. To hold Allstate liable, merely because an insured may have grabbed the steering wheel at the time of the accident, would contravene the purpose of § 240C–1, *i.e.,* "to exclude risks arising from the named person's negligence in driving the car." *Miller,* 305 Md. at 618, 505 A.2d 1338.

There being no genuine dispute as to a material fact, based on the foregoing, the circuit court did not err in granting summary judgment.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**